

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 21  PM 12: 43
JUL 2 1 2005
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GEORGE KING** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1194** |
| **JAMES D. MILLER, WARDEN, WCI** | **SECTION "M" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).



Fee
Process
Dktd
CtRmDep
Doc. No.

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE** as time-barred.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, George King, is incarcerated in the Washington Correctional

Institute in Angie, Louisiana.[2]  On August 20, 1998, King was indicted in Jefferson

Parish for second degree murder of Taron Griffin and possession of cocaine.[3]  The

Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> The testimony offered at trial shows that the defendant and the victim knew each other for some years before the murder and had a history of acrimonious incidents.  Defendant testified that he had problems in the past with Griffin.  In 1996, Griffin car-jacked a vehicle defendant was driving.  Griffin pointed a revolver at defendant, told him to get out of his car, and left defendant on the side of the road.  About 10:00 p.m. on the night of the car-jacking, Griffin forced his way into defendant's house and took his money.  The incidents were reported to the police, but Griffin was never tried for the car-jacking or the robbery, and defendant never got the car or the money back.  Defendant was present at another time when Griffin shot a man in the face and the arm.
>
> The record also shows that Griffin was imprisoned for shooting someone in the face and neck.  Detective Mike Tucker, of the Jefferson Parish Sheriff's Office, testified that Taron Griffin pled guilty in June of 1997 to shooting someone with a gun.  He further testified that five bags of marijuana were found on Griffin's body at the scene of the murder on June 22, 1998.  Detective Tucker stated that the first casing fired from defendant's gun was found near the curbside, and the remaining casings were found in the rear yard of the home where Griffin was killed.  Griffin was wedged between the house and a truck when his body was found.
>
> State witnesses testified that defendant made several telephone calls to Griffin's family members telling them he was looking for Griffin.  Defendant later found Griffin at the home of his sister, Catrina Griffin.  After a heated discussion

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 6, Indictment, 8/20/98; Grand Jury Return, 8/20/98.

in the front yard, defendant shot Griffin several times. Witnesses testified that defendant took a gun out of his vehicle and fired one shot. The gun jammed and defendant struggled with it while the victim backed away. Defendant was able to get the gun working again and began firing at Griffin, killing him. Defendant left the area in his vehicle.

 In his testimony, defendant admitted shooting Griffin after the two men had an argument. Defendant testified that he arrived at his home on June 21, 1998 and saw Griffin standing in front of the door. Defendant told Griffin he wasn't going to "fool" with him, and he left to go to his girlfriend's house. When defendant returned home at 8:00 a.m. the following morning, he found that his door had been kicked in. When he went inside, he saw that his home had been ransacked. Cabinet doors were swung open and $1,500.00 was missing. When a neighbor told defendant it was Griffin who kicked in the door, defendant became very angry, got in his truck, and went to find Griffin to get his money back. Defendant brought an AK-47 with him, which he put on the passenger seat of his vehicle. He went to 133 Rosalie Street and knocked on the door. When Griffin came outside, defendant told Griffin that he wanted his money back, and Griffin told him to get his "m... f... a..." from around his house. Griffin told him to take his "m... f..." money from him if he was "man enough." At that point, defendant went to his truck and got his gun. When he turned around, Griffin was right in front of him. Defendant pointed the gun down, but Griffin grabbed it, and the gun went off. The bullet hit the concrete, and the gun jammed. When Griffin saw that the gun had jammed, he backed up toward the yard and said, "I'm going to get something for your m... f... a... now." Defendant unjammed the gun, shot it, and continued to shoot it. He then turned around and went back to his truck. After the shooting, he threw the gun into the woods.

 Defendant stated that he weighed 200 lbs., and that he was a much smaller man than Griffin, who according to other testimony weighed about 380 lbs. Defendant testified that he regretted going over to Griffin's house that day, and that he was sorry he killed him. After the shooting, defendant went to Houston, Texas to see his son. When he returned home, he turned himself in to the Sheriff's Department without a lawyer. He admitted on cross-examination that he told Catrina Griffin when he called that he was going to kill Taron.

State v. King, 788 So.2d 589, 591-92 (La. App. 5th Cir. 2002) (emphasis added); State

Record Volume 1 of 6, Fifth Circuit Opinion, 00-KA-1434, p. 3-5, May 16, 2001.

King was tried before a twelve-person jury on July 14, 15 and 16, 1999, on the charge of second degree murder.[4]  He was found guilty of the lesser offense of manslaughter.[5]  On October 15, 1999, the state trial court sentenced him to 25 years imprisonment.[6]

More than five months later, on March 30, 2000, King entered a plea of guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970),[7] to the remaining charge of possession of cocaine.[8]  The state trial court sentenced King to 25 years imprisonment to run concurrently with the sentence for the separate manslaughter conviction.

About two months later, on May 24, 2000, King filed a motion with the trial court to enforce his right to appeal the manslaughter conviction.[9]  The trial court granted the motion on June 2, 2000 and counsel was appointed.[10]

---

[4]St. Rec. Vol. 1 of 6, Trial Minutes (2 pages), 7/14/99; Trial Minutes, 7/15/99; Trial Minutes, 7/16/99; St. Rec. Vol. 5 of 6, Trial Transcript, 7/14/99; St. Rec. Vol. 3 of 6, 7/15/99; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 7/15/99; Trial Transcript, 7/16/99.

[5]St. Rec. Vol. 1 of 6, Trial Minutes, 7/16/99; Verdict Form, 7/16/99.

[6]St. Rec. Vol. 1 of 6, Sentencing Minutes, 10/15/99; St. Rec. Vol. 4 of 6, Sentencing Transcript, 10/15/99.

[7]Under Alford, a criminal defendant may enter and the court can accept a plea of guilty in spite of the defendant's insistence that he is innocent.

[8]St. Rec. Vol. 1 of 6, Plea Minutes, 3/30/00; Waiver of Constitutional Rights Plea of Guilty, 3/30/03.

[9]St. Rec. Vol. 1 of 6, Motion to Enforce Direct Appeal, 5/24/00.

[10]St. Rec. Vol. 1 of 6, Trial Court Order, 6/2/00.

On appeal, King's counsel alleged that the 25-year prison sentence was excessive and that trial counsel was ineffective for failure to file a motion to reconsider the sentence and for failing to preserve the sentencing issue for appeal.[11] On May 16, 2001, the Louisiana Fifth Circuit affirmed King's conviction finding the claims to be without merit.[12]

King filed a pro se application for rehearing in the appellate court on June 4, 2001, requesting that the court consider additional claims of ineffective assistance of counsel he sought to raise pro se.[13] The court subsequently denied the application because the brief was not timely filed.[14]

King filed an untimely[15] writ application in the Louisiana Supreme Court on August 28, 2001, alleging that he was denied a meaningful appeal because the appellate court did not consider the issues raised pro se and that the trial court erred in failing to

---

[11]St. Rec. Vol. 4 of 6, Appeal Brief, 11/2/00; State v. King, 788 So.2d at 592; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 00-KA-1434, p. 5, 5/16/01.

[12]State v. King, 788 So.2d at 595; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 00-KA-1434, p. 11, 5/16/01. The appellate court also directed the trial court to notify King of the post conviction delays and the trial court complied. St. Rec. Vol. 1 of 6, Letter to King.

[13]St. Rec. Vol. 4 of 6, Application for Rehearing En Banc, 6/4/01.

[14]St. Rec. Vol. 1 of 6, 5th Cir. Order, 00-KA-1434, 7/25/01.

[15]The writ application was filed more than 30 days after the appellate court ruled. La. Code Crim. P. art. 922(C); La. S. Ct. R. X§5(a).

5

consider mitigating factors rendering his sentence excessive.[16] The Louisiana Supreme Court denied the application without reasons on September 20, 2002.[17]

More than six months later, on April 1, 2003, King filed an application for post-conviction in the state trial court, arguing that he was denied a meaningful appeal and that counsel was ineffective for failure to object to the grand jury indictment, an erroneous reasonable doubt jury charge and the playing of portions of his taped confession.[18] The state trial court denied the application in part on April 14, 2003, finding no merit to the first three claims, but deferring its ruling on the ineffective assistance of counsel claim regarding the playing of the tape.[19] After receiving briefing from the State, the state trial court denied relief as to the fourth claim as meritless on May 23, 2003.[20]

That same day, May 23, 2003, King filed a reply to the State's opposition memorandum reiterating his arguments in support of his claim.[21] The trial court

---

[16]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 01-KO-2456, 8/28/01; St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2001-KO-2456, 8/28/01.

[17]State v. King, 825 So.2d 1157 (La. 2002); La. S. Ct. Order, 2001-KO-2456, 9/20/02.

[18]St. Rec. Vol. 2 of 6, Uniform Application for Post-Conviction Relief, 4/1/03.

[19]St. Rec. Vol. 2 of 6, Trial Court Order (3 pages), 4/14/03.

[20]St. Rec. Vol. 2 of 6, Memorandum in Opposition to Application for Post Conviction Relief, 5/15/03; Trial Court Order, 5/23/03.

[21]St. Rec. Vol. 2 of 6, Petitioner's Reply to Opposition Response, 5/23/03.

construed the pleading as another motion seeking post-conviction relief and denied the motion as repetitive on June 9, 2003.[22]

King filed an untimely[23] application for supervisory writs in the Louisiana Fifth Circuit on July 22, 2003.[24]  The Louisiana Fifth Circuit denied the application on July 25, 2003, because the application disclosed no error in the trial court's ruling.[25]

On August 19, 2003, King filed a writ application in the Louisiana Supreme Court challenging the denial of relief on his post conviction claims.[26]  The Louisiana Supreme Court denied the application without reasons on August 20, 2004.[27]

II.    FEDERAL HABEAS PETITION

On March 31, 2005, King filed a petition for federal habeas corpus relief seeking relief on grounds that he was denied a meaningful appeal because his pro se claims were not considered and that counsel was ineffective for failure to object to the grand jury

---

[22]St. Rec. Vol. 2 of 6, Trial Court Order, 6/9/03.

[23]The application was filed more than 30 days after the trial court's ruling.  La. App. Rule 4-3; La. Code Crim. P. art. 922.

[24]The record does not contain a copy of this writ application.  The filing date appears on the face of the order and has been confirmed by my staff with the clerk of the Louisiana Fifth Circuit.  St. Rec. Vol. 2 of 6, 5th Cir. Order, 03-KH-854, 7/25/03.

[25]St. Rec. Vol. 2 of 6, 5th Cir. Order, 03-KH-854, 7/25/03.

[26]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 03-KH-2363, 8/19/03; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2003-KH-2363, 8/19/03.

[27]State ex rel. King v. State, 882 So.2d 581 (La. 2004); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2003-KH-2363, 8/20/04.

indictment, an erroneous reasonable doubt jury charge and the playing of only portions of his taped confession.[28]

The State responded to the petition in part by suggesting that King's federal petition "appears" to be timely.[29] However, the State bases this tentative statement on an erroneous application of the AEDPA finality of conviction and tolling provisions. The State also asserts that King has exhausted state court remedies and that his claims are without merit.

III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[28]Rec. Doc. No. 1, Memorandum in Support, p. 4-5.

[29]Rec. Doc. No. 7.

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to King's petition, which, for reasons discussed below, is deemed filed in this court on March 20, 2005.[31]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The record reflects that King has exhausted his state court remedies. For the following reasons, however, I find that King's petition is not timely filed under the AEDPA and must be dismissed with prejudice for that reason.

IV.    STATUTE OF LIMITATIONS

A.    NO WAIVER OF THE LIMITATIONS DEFENSE

The AEDPA's statute of limitations is an affirmative defense, rather than a jurisdictional mandate. Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert.

---

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed King's petition on March 31, 2005. King did not date his signature on the petition or the memorandum in support. King, however, signed and date the pauper application which accompanied the petition, on March 20, 2005. The package of documents bear a postal meter date of March 23, 2005. Considering the information available in the record and affording King every benefit, the Court will consider March 20, 2005, the date he signed the pauper application, as the earliest date he could have submitted the package of documents to prison officials for mailing to the Court.

denied, 526 U.S. 1074 (1999).  Consequently, the limitations defense may be waived, but the waiver must be express and intentional.  Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000) (citing Smith v. Johnson, 216 F.3d 521 (5th Cir. 2000)), cert. denied, 2001 WL 167908 (Feb. 12, 2001); Magouirk v. Phillips, 144 F.3d 348 (5th Cir. 1998).

In the instant case, the State tentatively concluded that the petition "appears" to be timely.  However, the State's calculation of the conviction finality date and the AEDPA tolling periods in its response to the petition are inaccurate under any reading of the law.  Under a proper calculation, using the precedent set forth below, King's petition is not timely filed.

The State could not have intended to commit error or mistake through its counsel's tentative language and miscalculations in a response memorandum, and thus did not expressly waive its limitations defense by incorrectly concluding that the petition is timely.  See Simpkins v. Washington Metropolitan Area Transit Authority, 2 F. Supp.2d 52 (D.D.C. 1998) (calculation error based on mistake did not constitute waiver of limitations defense).  Furthermore, this court is not required to accept a waiver, either express or implicit, where it is not judicially warranted.  Kunkle v. Dretke, 352 F.3d 980, 989-90 (5th Cir. 2003) (citing McGee v. Estelle, 722 F.2d 1206 (5th Cir. 1984), and Granberry v. Greer, 481 U.S. 129 (1987)); Graham v. Johnson, 94 F.3d 958, 970 (5th Cir. 1996).

For these reasons, I find that the State has not waived the limitations defense through its inaccurate calculation of the conviction finality date and the AEDPA limitations and tolling periods.  Petitioner is hereby placed on notice that the limitations issue is being considered by this Court.  <u>Fisher v. State</u>, 169 F.3d 295, 301 (5th Cir. 1999); <u>Magouirk</u>, 144 F.3d at 358, and any objection to the court's assessment of this issue must be timely filed as required at the end of this report.

B.    <u>THE PETITION IS UNTIMELY FILED</u>

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the judgment of conviction.[32]  In this case, King is only challenging his

---

[32]Specifically, Section 2244(d) provides:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

1999 conviction for manslaughter. The court must therefore determine when King's manslaughter conviction became final to determine the commencement date for calculating the timeliness of this federal petition.

In its response, the State contends that King's manslaughter conviction became final for purposes of the AEDPA on December 19, 2002, which was 90 days after the Louisiana Supreme Court denied his writ application following his out-of-time appeal. For the following reasons, I find that this conclusion is contrary to federal law.

As outlined above, King was sentenced on October 15, 1999. Ordinarily, his conviction would become final five days later, on October 20, 1999 when he did not timely file a written notice of appeal or file for reconsideration of his sentence. Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five day deadline for filing a notice of appeal under La. Code Crim. P. art. 914[33]). However, in the instant case, King was granted and received an out-of-time appeal more than seven months after his conviction would otherwise be considered final under the AEDPA. The question before the court, therefore, is whether the out-of-time appeal had an impact on the commencement of AEDPA's limitation period.

---

[33]At the time of King's conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal. Because the amendment occurred well after King's sentencing, it is inapplicable to this case.

In <u>Salinas v. Dretke</u>, 354 F.3d 425 (5th Cir. 2004), <u>cert. denied</u>, 541 U.S. 1032 (2004), the United States Fifth Circuit Court of Appeals addressed the question of whether an out-of-time petition for appellate review was still within "direct review" such that it restarts the finality of the state conviction at issue for AEDPA limitation purposes. <u>Id.</u>, at 429.   The Fifth Circuit held that it does <u>not</u>.

In so finding, the <u>Salinas</u> court acknowledged that the granting of a petition for out-of-time appellate review by the Texas state courts restored the petitioner to the position he was in when he first possessed the right to direct review <u>under state law</u>. <u>Id.</u> at 429; <u>Cockerham v. Cain</u>, 283 F.3d 657 (5th Cir. 2002) (same, under Louisiana law). The court determined, however, that the granting of out-of-time review did <u>not</u> affect finality <u>under federal law</u>.

The Fifth Circuit considered the fact that, under Texas law, in order to obtain out-of-time review, a petitioner must make his request through the collateral review process. The court concluded that this procedural necessity took the petitioner out of the "direct review" process and entitled him to nothing more than tolling of the federal limitations period. <u>Id.</u> at 430.

Thus, for purposes of <u>federal law</u>, the Fifth Circuit held in <u>Salinas</u> that the granting of a request for out-of-time review "<u>tolls</u> AEDPA's statute of limitations . . . but it does not require a federal court to restart the running of AEDPA's limitations period

altogether." Id. at 430 (footnote omitted) (emphasis added); see also, McGee v. Cain, 104 Fed. Appx. 989, 991-992 (5th Cir. 2004) (applying Salinas rationale to Louisiana out-of-time writ application).  The Fifth Circuit held that, for limitations purposes, Salinas's conviction was final when the direct review process ended and it remained final for AEDPA purposes. Id.  The Salinas court further resolved that the fact that petitioner was eventually granted an out-of-time appeal due to ineffective assistance of counsel (i.e., counsel failed to lodge the appeal timely) did not restart the federal limitations period, nor did attorney error or neglect constitute a basis for equitable tolling. Salinas, 354 F.2d at 432 (quoting Cousin, 310 F.3d at 848).

Under Louisiana law, as in Texas, to obtain an out-of-time appeal, a petitioner must file an application for post-conviction relief. McGee, 104 Fed. Appx. at 991 (citing State v. Counterman, 475 So.2d at 339).  Thus, the analysis of the United States Fifth Circuit Court of Appeals in Salinas applies to Louisiana convictions, leaving such convictions final for purposes of commencement of the AEDPA limitations period at the conclusion of the original period for seeking direct review. Id.

In the instant case, King, like the petitioners in Salinas and McGee, was granted his out-of-time appeal through a collateral post-conviction request made to the state trial court.  The out-of-time appeal process affords King tolling of the AEDPA's limitations period.  However, the out-of-time appeal did not restart or revive the finality of King's

14

conviction for purposes of calculating the commencement date for AEDPA's one-year limitations period.

Therefore, the suggestion by the State that King's conviction became final at the conclusion of his out-of-time appeal is legally erroneous under <u>Salinas</u>. Furthermore, because King's out-of-time appeal was not part of the "direct review process" according to <u>Salinas</u>, the State's addition of 90 days thereafter is also legally erroneous. The 90 days referenced by the State is presumably taken from the decision in <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1099 (2000). In <u>Ott</u>, the United States Fifth Circuit Court of Appeals recognized that the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is to be considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A) when a state petitioner proceeds in a <u>timely</u> manner through the state's highest court in the <u>direct appeal process</u>. <u>Id</u>. at 513. Because the out-of-time appeal does not fit this requirement, the <u>Ott</u> period does not apply in the instant case. I also note, as will be discussed in detail in the tolling calculation below that King's writ application to the Louisiana Supreme Court was also <u>un</u>timely filed and therefore would have broken the direct line of appeal under any circumstance for purposes of considering the <u>Ott</u> 90-day period.

Therefore, pursuant to the holding in <u>Salinas</u>, as applied to Louisiana cases in <u>McGee</u>, King's conviction became final on October 20, 1999, five days after he was

sentenced and failed timely to appeal. See Cousin, 310 F.3d at 845 (conviction becomes final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914) and discussion at footnote 33 infra.

Thus, literal application of the statute would bar King's Section 2254 petition in this court as of October 20, 2000. Under the federal mailbox rule, his federal petition is deemed filed on March 20, 2005, almost four and one-half years after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and there exists rare or extraordinary circumstances which prevented timely filing. Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis, 158 F.3d at 810. Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 125 S. Ct. at 1814-15; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

16

The record suggests that King's delayed appeal may have been the result of error on the part of his trial counsel. However, as noted above, the fact that counsel failed to lodge a timely appeal does not constitute a basis for equitable tolling. Salinas, 354 F.2d at 432 (quoting Cousin, 310 F.3d at 848). King therefore has not asserted any reason that might constitute exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

17

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

18

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). Furthermore, a "pertinent judgment or claim" requires

that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

However, a motion for transcripts or copies is not "other collateral review" which would entitle a petitioner to statutory tolling under Section 2244(d)(2). Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw). A petitioner is not entitled to the exceptional remedy of tolling while he waits to gather every scrap of paper that might support his post-conviction claims. See Flanagan, 154 F.3d at 199; Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000) (Berrigan, J.), aff'd, 239 F.3d 365 (5th Cir. 2000) (delay in receiving transcripts does not warrant tolling unless petitioner can prove that he had to have transcripts to proceed); Gerrets v. Futrell, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receiving transcript not specifically required to file application does not warrant equitable tolling).

Thus, for the reasons discussed above, the one-year AEDPA limitations period began to run in King's case on October 21, 1999, the day after the conviction he

challenges in this case became final. The limitations period ran uninterrupted for 216 days, until May 24, 2000, when King filed his motion for an out-of-time appeal. The limitations period remained tolled until June 15, 2001, which was 30 days after his conviction was affirmed by the Louisiana Fifth Circuit and he did not timely seek further review. Williams, 217 F.3d at 310; La. Code Crim. P. art. 922; La. S. Ct. Rule X§5.

The limitations period began to run again on June 16, 2001, and ran uninterrupted for the remaining 149 days, until it expired on November 11, 2001. King had no other properly filed state post-conviction or other collateral review proceedings pending during that time period.

I note that, after the conviction was affirmed, King had 14 days under Louisiana law to file for rehearing in the Louisiana Fifth Circuit. La. Code Crim. P. art. 922(A). However, King did not file his application for rehearing until 19 days later, on June 4, 2001. The application was denied by the Louisiana Fifth Circuit because the brief was untimely filed. There are no exceptions to the timeliness of a rehearing application and an improperly filed request for rehearing will not toll the AEDPA statute of limitations. See Gaudet v. Cain, 31 Fed. Appx. 835, 2002 WL 243278 (5th Cir. 2002); see also Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)").

Furthermore, King also filed a writ application in the Louisiana Supreme Court during that time period, on August 28, 2001, which was mentioned above in the finality discussion. However, that filing was <u>untimely</u> under La. S. Ct. R. X§5(a) because it was filed more than 30 days after the Louisiana Fifth Circuit affirmed King's conviction and more than 30 days after denial of the application for rehearing. Under federal habeas corpus law, this untimely filing <u>cannot</u> be considered in the tolling calculation under the AEDPA for the following reasons.

The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is <u>not</u> properly filed because it is untimely, and post-conviction review is <u>not</u> pending for purposes of AEDPA's statute of limitations and tolling doctrines. <u>Williams</u>, 217 F.3d at 309-11; <u>see</u> <u>Pace</u>, 125 S. Ct. at 1812. Under this doctrine, King cannot benefit from any tolling as a result of his improperly filed and untimely writ application in the Louisiana Supreme Court.[34]

_____

[34]Furthermore, under federal habeas corpus law, a state mailbox rule would not be considered or applied to change this conclusion. <u>Coleman</u>, 184 F.3d at 402; <u>Porter</u>, 2005 WL 1185808 at *5; <u>Richardson v. Dretke</u>, 85 Fed. Appx. 394, 395 (5th Cir. 2004); <u>Kestler v. Cockrell</u>, 73 Fed. Appx. 690, 691 (5th Cir. 2003). Federal habeas courts do not extend the mailbox rule of <u>Houston v. Lack</u>, 487 U.S. 266 (1988), to state post-conviction filings for tolling purposes. <u>Coleman</u>, 184 F.2d at 402; <u>Torns v. Mississippi</u>, 54 Fed. Appx. 592, 2002 WL 31730353 (5th Cir. Nov. 22, 2002). In <u>Coleman</u>, the court declined to extend the mailbox rule, holding that "[u]nlike this court's prior extensions of <u>Houston</u>, such a ruling would require us to interpret state rules of filing and to address the filing systems of state courts." <u>Id</u>. at 402. The <u>Coleman</u> court, however, allowed for consideration of equitable tolling where a petitioner contends that his ability to file a federal habeas petition was affected by a state proceeding. <u>Id</u>. In considering equitable relief, the <u>Coleman</u> court determined mathematically that if the petitioner had mailed his state petition on the date alleged, and he were granted equitable tolling for the pendency

Even if the untimely application for rehearing in the Louisiana Fifth Circuit and the untimely writ application to the Louisiana Supreme Court were considered for tolling purposes, King's federal petition is still untimely.

For example, as calculated above, 216 days of the AEDPA filing period would have already run from finality of the conviction on October 20, 1999 to the filing of his motion for an out-of-time appeal on May 24, 2000, leaving King an additional 149 days to file his federal habeas petition. Even if the entire period from the filing of the motion for appeal on May 24, 2000 to denial of the post-appeal Louisiana Supreme Court writ application on September 20, 2002, another 102 days of the one-year statute of limitations period would run between September 21, 2002 and April 1, 2003, when King filed an application for post-conviction relief. The AEDPA one-year period would remain tolled from April 1, 2003 until July 9, 2003, which is 30 days after the state trial court denied the final claim in the application and no further appellate review was available. Williams, 217 F.3d at 310; La. App. Rule 4-3.

The one-year AEDPA statute of limitations would begin to run again on July 10, 2003, for an additional 13 days until July 22, 2003 when King filed an untimely writ

---

of that state petition, the tolling would have caused his federal petition to be timely. Coleman, at 402. However, as the Fifth Circuit has since clarified, "[t]he application of our rule in Coleman is not itself a 'rare and exceptional circumstance' sufficient to justify the application of equitable tolling." (citation in footnote omitted) Miller v. Cockrell, 45 Fed. Appx. 326, 2002 WL 1899595, No. 00-20930 at *4 (5th Cir. Jul. 11, 2002) (Table) (unpublished). Although the Miller opinion is not published, I find its analysis persuasive.

application in the Louisiana Fifth Circuit. Under current United States Fifth Circuit precedent, King would be entitled to tolling for the pendency of this untimely writ application to the appellate court. Id.; Melancon v. Kaylo, 259 F.3d 401, 405 (5th Cir. 2001) (because La. App. R. 4-3 has exceptions, an untimely appellate writ application tolls the one-year statute of limitations period during the time it was actually pending); but see Pace, 125 S. Ct. at 1811 (the existence of exceptions to a state timeliness requirement does not prevent a late application from being considered improperly filed). Thus, the AEDPA period would remain tolled from June 22, 2003, when the appellate writ application was filed, until August 20, 2004, when denial of the subsequent, timely writ application to the Louisiana Supreme Court occurred.

The statute of limitations would begin to run again on August 21, 2004 and would do so uninterrupted for the remaining 34 days, when it would expire on September 23, 2004, six months before King's federal petition is deemed filed. Thus, even under this generous alternative calculation, King's federal petition would be untimely.

Nevertheless, the one-year AEDPA statute of limitations period applicable to King's federal petition actually expired on November 11, 2001, under the original calculation above. King's federal habeas corpus petition is deemed filed on March 20, 2005, more than three years after the expiration of the one-year limitations period

24

established by AEDPA.  Thus, King's petition must be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of George King for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred under the AEDPA.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _2/ᵗʰ_ day of July, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE